IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JANET WILLIAMS,

    Plaintiff,　　　　　　　　　No. CIV S-04-2353 KJM

  vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.　　　　　　　　　<u>ORDER</u>
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////
/////
/////
/////

1

I. Factual and Procedural Background

In a decision dated March 19, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of major depressive disorder and bilateral shoulder pain consistent with osteoarthritis but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff can perform medium work with no work above shoulder level and limited to simple unskilled work; based on the testimony of a vocational expert, there are a significant number of jobs in the national economy plaintiff can perform; plaintiff can perform her past relevant work

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

as a home care provider; and plaintiff is not disabled. Administrative Transcript ("AT") 22, 26-27. Plaintiff contends the ALJ improperly assessed the weight that should be given to the opinions of the treating and examining physicians, failed in his duty to develop the record, and improperly discredited plaintiff's subjective complaints.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

III. <u>Analysis</u>

    A. Physicians' Opinions

Plaintiff challenges the ALJ's assessment of the treating and examining physicians' opinions regarding plaintiff's limitations. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. <u>Id</u>. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

Plaintiff contends that the ALJ improperly rejected the opinion of treating psychiatrist, Dr. Randhawa. Contrary to plaintiff's assertion, Dr. Randhawa did not conclude plaintiff met listing level severity for Listings 12.04 or 12.06. Dr. Randhawa rated plaintiff's

4

severity of impairment only as slight or moderate, which does not meet the requirements for the B criteria of this listing.[2]  AT 295, 377.  With respect to Dr. Randhawa's assessment of individual mental activities, the doctor assessed only slight or moderate limitations with respect to most work functions.  The only marked limitation assessed by Dr. Randhawa was in the ability to complete a normal work day without interruptions from psychologically based symptoms.  AT 296-297, 378-379.  The ALJ rejected this extreme limitation as not substantiated by the doctor's own medical findings or elsewhere in the records and based on plaintiff's subjective complaints.  AT 24.  The ALJ fairly characterized the psychiatric treatment records and the court finds no error in the ALJ's finding that Dr. Randhawa's assessment of plaintiff's ability to complete a normal workday was unsupported by the record.  AT 23-24, 139-171, 249-270, 311-326.  The ALJ also rejected Dr. Randhawa's opinion as being based largely on plaintiff's subjective complaints.  AT 24.  Plaintiff is correct that psychiatric treatment must be based on the patient's reported symptoms.  However, plaintiff's reported symptoms, as evidenced in the medical record, simply do not support the conclusion that plaintiff would have marked limitations in being able to complete a normal workday if limited to simple unskilled work, which is the residual functional capacity found by the ALJ.  AT 26.

        Plaintiff also asserts the ALJ committed error in relying on the opinions of the examining mental health practitioners, Drs. Tyl and Petrides.  Dr. Tyl, after conducting an examination in June 2002, diagnosed plaintiff as having a panic disorder with agoraphobia; her

---

[2] The Part B criteria evaluate the functional loss resulting from a depressive disorder or anxiety disorder.  The Part B criteria are the same for Listings 12.04 and 12.06 and require at least two of the following functional limitations:
    1. marked restriction of activities of daily living;
    2. marked difficulties in maintaining social functioning;
    3. marked difficulties in maintaining concentration, persistence, or pace; or
    4. repeated episodes of decompensation, each of extended duration.
"Marked" means "more than moderate, but less than extreme."  See Listing 12.00(C).

1   functional assessment was that plaintiff could perform simple tasks but would be at risk for
2   having panic symptoms on the job if the job became detailed or complex. AT 174-175. Dr. Tyl
3   also noted that if plaintiff's panic symptoms continued, she might have difficulty performing
4   work activities on a consistent basis and maintaining regular attendance. AT 174-175. In this
5   regard, the ALJ properly noted the records do not demonstrate significant disabling panic attacks.
6   AT 23, 139-171, 249-270, 311-326. Dr. Tyl's speculative limitation therefore was properly
7   rejected by the ALJ. Dr. Petrides examined plaintiff in November 2003, and concluded plaintiff
8   had marked limitations in the ability to understand, remember and carry out detailed instructions,
9   but was only slightly impaired in the ability to perform work related mental activities due to low
10  IQ. AT 298-305. The conclusions of these examiners were based on their own clinical findings
11  and the ALJ was entitled to resolve the conflict between their opinions and that of Dr. Randhawa.
12          Plaintiff also contends the ALJ gave no reason for rejecting the opinion of a state
13  agency physician, Dr. Miller, who made a mental residual functional capacity assessment in
14  September 2002. The ALJ did not reject the opinion of the state agency physician. On the
15  contrary, the ALJ specifically noted that the state agency physician's evaluation was not
16  inconsistent with that of Dr. Tyl. AT 23. Also contrary to plaintiff's assertion, the state agency
17  doctor did not rely on Dr. Petrides' assessment because the state agency's assessment predates
18  that of Dr. Petrides. The state agency physician noted plaintiff's panic attacks with agoraphobia
19  were controlled with medications and plaintiff could perform simple repetitive tasks. AT 221.
20  No marked limitations were assessed. AT 223-224. Dr. Miller also concluded plaintiff could
21  adapt to competitive employment. AT 225. The ALJ's limitation of simple unskilled work is
22  consistent with the state agency physician's opinion.
23          Plaintiff also challenges the ALJ's assessment of the treating and examining
24  physicians with respect to plaintiff's physical impairments. Treating physician Dr. Vanderberg
25  opined in a residual functional capacity evaluation dated February 3, 2004 that plaintiff was
26  limited to less than a sedentary capacity. AT 327-331. The basis for the lifting and carrying

6

capacities was the orthopedic assessment performed at UCD.  AT 328.  The ALJ correctly noted Dr. Vanderberg's assessment was unsupported by the medical records.  AT 22, 332-338 (patient claimed shoulders were the same as they had been five to six years ago, conservative physical therapy recommended), 339-372.  In determining plaintiff's residual functional capacity, the ALJ limited plaintiff to not engaging in above shoulder work.  AT 26.  The ALJ's assessment is consistent with that of both the examining physician, Dr. O'Brien, and the state agency physicians.  AT 176-181, 200-208, 229-236.  Although plaintiff is correct that Dr. O'Brien did not have the benefit of reviewing the x-rays from plaintiff's work up at UCD in 2004, plaintiff herself contended her condition had remained unchanged, the x-rays showed only calcifications, and physical therapy was recommended.  AT 280, 334, 335, 337.  On this record, there was no error in the ALJ resolving the conflicting medical opinions in favor of the examining physician.

      B.   Development of the Record

         Plaintiff also contends the ALJ failed in his duty to develop the record.  Disability hearings are not adversarial.  See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to develop the record even when claimant is represented).  Evidence raising an issue requiring the ALJ to investigate further depends on the case.  Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288).

         As directed by the Appeals Council, the ALJ obtained a consultative mental examination, which was performed by Dr. Petrides.  AT 66-67, 298-303.  Plaintiff contends no records were provided to Dr. Petrides, a contention contradicted by the doctor's written report, which indicates records were reviewed.  AT 298.  Although which records were provided is

unspecified, Dr. Petrides administered psychological tests and conducted his own psychological evaluation. The date of the examination is close in time to the second mental residual functional capacity evaluation of Dr. Randhawa and only a few months before the date of the ALJ's decision. AT 27, 298, 374. Under these circumstances, the record was adequately developed.

### C. Credibility

Plaintiff also contends the ALJ improperly discredited her testimony regarding her limitations. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional

impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

      Plaintiff testified she could lift at most five pounds, walk a couple of blocks, stand for no more than 30 or 40 minutes and that her mental status over the past couple of years had gotten worse. AT 429, 433. With respect to plaintiff's physical impairments, the ALJ discussed extensively the medical evidence and noted the normal findings or insignificant degenerative changes on EMG and x-rays. AT 22-23, 276, 278, 290, 309-310, 334, 335, 348, 359, 370. The ALJ also noted plaintiff's shoulder problems had been treated conservatively and there was no surgery, hospital or emergency treatment for this condition. AT 23, 237-248, 333 (exercise program prescribed), 339-372. With respect to plaintiff's mental impairment, the ALJ considered plaintiff's failure to comply with her medication regimen. AT 24. Although there is evidence plaintiff's medications were changed to accommodate various side effects, the ALJ's conclusion that plaintiff was not completely compliant in her medical regimen is supported by the record. AT 146, 150, 314. In addition, the ALJ considered the inconsistency in plaintiff's testimony between the time she first testified in March 2003 and February 2004. AT 24-25. Although both times plaintiff testified she could lift only five pounds, at the first hearing plaintiff testified she had no problems with walking, sitting or standing while at the latter hearing somewhat less than a year later, she testified to the extreme limitations with respect to walking and standing and that her mental status had deteriorated. AT 409, 429, 433. As correctly noted by the ALJ, the medical records do not document the change in plaintiff's condition as testified to by plaintiff. AT 311-326, 332-372. The factors considered by the ALJ all were valid and

1  supported by the record.  The ALJ's credibility determination was based on permissible grounds
2  and will not be disturbed.
3         The ALJ's decision is fully supported by substantial evidence in the record and
4  based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:
5         1. Plaintiff's motion for summary judgment or remand is denied, and
6         2. The Commissioner's cross-motion for summary judgment is granted.
7  DATED: March 30, 2006.

                                    _____
                                    UNITED STATES MAGISTRATE JUDGE

006
williams.ss